**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **PREFERRED SHIPPERS, INC.,** | : | |
| Plaintiff, | : | Case No. 2:06-cv-1060 |
| v. | : | Judge Holschuh |
| **TRIPLE T TRANSPORT, INC., et al.,** | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

**Memorandum Opinion and Order**

This declaratory judgment and breach of contract action is before the Court on motions for summary judgment filed by the defendants, Ralston Food Sales, Inc. ("Ralston") and Bender Warehouse Company ("Bender Warehouse") (collectively "moving defendants"). Because there is no "actual controversy" between Preferred and the moving defendants and because, to the extent any controversy exists regarding purely factual issues, the Court declines to exercise its discretion under the Declaratory Judgment Act, the declaratory judgment claims asserted against the moving defendants will be dismissed. Further, because no breach of contract claims are being asserted against the moving defendants, the motion for summary judgment is moot and will be denied for that reason.

I.

The plaintiff, Preferred Shippers, Inc. ("Preferred"), entered into a "Contract Carrier-Broker Contract" with the defendant, Triple T Transport, Inc. ("Triple T"), in March 2006 that required Triple T to offer "for shipment quantity of not less than 80,000 pounds per year or a minimum of two (2) shipments for each year this Contract remains in effect and [that Preferred] shall agree to

transport those shipments tendered during that period of time." (Aff. of Jamie D. Salum, Ex. 1 at p. 2 (doc. #26)). The contract prescribes that "all transportation services provided to [Triple T] by [Preferred] shall be as a CARRIER of record on all related documents and that services rendered have been designed to meet distinct needs of [Triple T] and [Triple T's] Customers and to arrange such transportation of property and general commodities ...." (Id. at p. 1). With regard to liability, the contract states, in relevant part:

> [Preferred] agrees to indemnify, defend and hold [Triple T] and/or its Customer(s) ... harmless from and against all liabilities, damages, fines, costs, claims, demands and expenses ... including damage or destruction of any property, or injury ... to any person, arising out of or related to, directly or indirectly: any act, omission, action, or failure by [Preferred], its agents, employees or subcontractors, arising out of [Preferred's] performance of services under this Contract. [Preferred] assumes all liability for loss or damage for all property while under its care, custody, and control and shall pay [Triple T], after investigation and due process as outlined in accordance with 49 C.F.R. Part 370, for such Property as are lost, damaged or destroyed including, but not limited to, the cost of goods as set forth on invoices furbished by Customer(s) and/or vendor's price lists in effect as of the date of loss or damage together with any normal or extra costs related to claim inspection, product testing, repackaging, dumping, disposal, extraordinary costs, replacement costs above original costs, or relevant administrative expenditures.

(Id.) The contract also indicates that Preferred "agrees that equipment is [to] be clean, odor-free, in good repair and is appropriate for cargo that is being tendered and accepted." (Id. at p. 2).

In March 2006, Triple T arranged for Preferred to transport approximately 26,000 pounds of dehydrated marshmallows ("Marbits") from Indiana to the Bender Warehouse in Nevada.[1] The ultimate consignee of the freight was Ralston.

Preferred dispatched a truck to pick up the Marbits from a Kraft Foods facility in Ligonier, Indiana. Kraft employees assisted in loading the freight onto the trailer, and the Marbits were

---

[1] While this is a motion for summary judgment, the Court notes that the moving parties rely heavily on the general facts outlined in the complaint as the basis for their motion.

subsequently transferred to La Porte, Indiana and placed in a rail container with seal number 3643574. The rail container was shipped across country to Stockton, California via Union Pacific Railroad.

The rail container arrived in California with the seal intact. Under Preferred's supervision, the Marbits were subsequently transferred to a second van trailer operated by Volz Trucking Services LLC, sealed with number 144557 and transported to the Bender Warehouse in Nevada, which was its final destination.

The Marbits arrived at the Bender Warehouse with the new California-placed seal intact, but the Bender Warehouse employees refused delivery because the freight was not delivered in the same trailer (and with the original seal) in which it was loaded in Ligonier, Indiana. Ralston was contacted about this issue and also indicated that the freight be refused.

Preferred notified the Volz driver to remain at the Bender Warehouse until the situation was resolved. Preferred then contacted Triple T and explained the situation. Triple T, after subsequently seeking instruction from Ralston, informed Preferred that the Marbits delivery was refused because it arrived in a different container and with a different seal number, which posed a possible risk of product contamination. Delivery was never accepted, and the Marbits were shipped back to California where the goods were transferred to a storage container.

In early April 2006, Ralston requested that Triple T pay $23,408.00 for the value of the Marbits under the contract agreement between those two entities. Before payment was made, Ralston and Triple T agreed for an independent inspection of the Marbits to determine whether the Marbits were damaged or contaminated. The inspection concluded that the freight was undamaged and free from contamination. Despite the independent report, Ralston still refused delivery.

3

Ralston subsequently contacted Preferred for a second inspection to be performed by a Ralston representative. Based on this second inspection, the Ralston inspector concluded that the Marbits were damaged goods and could not be accepted.

In September 2006, Triple T paid Ralston $23,408.00 for the allegedly damaged Marbits. In return, Triple T requested Ralston's cooperation and assistance in recovering that amount from Preferred. Triple T never paid Preferred for the amount due under the original contract, which was $2,746.00.

Preferred filed this declaratory judgment and breach of contract action in this Court against Triple T, Ralston and Bender Warehouse alleging, inter alia, that Triple T breached their "Contract Carrier-Broker Contract" by refusing to pay Preferred for the Marbits shipment from Indiana to Nevada, as well as endorsing Bender Warehouse's and Ralston's decision to refuse the acceptance of the freight. Preferred also seeks a declaratory judgment that:

> the Carmack Amendment, 49 U.S.C. § 14706, preempts all state and common law remedies resulting from alleged damage to freight shipped in interstate commerce. PREFERRED also seeks a declaration from this Court that liability under the Carmack Amendment can only be imposed for "the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or ( C) another carrier over whose line or route the property is transported in the United States." 49 U.S.C. § 14706(a)(1).
>
> PREFERRED also seeks a declaratory judgment from this Court under the Declaratory Judgment Act finding and stating that the freight at issue, when tendered for delivery, was not damaged in any regard as verified by independent inspectors and that the freight was improperly refused. PREFERRED also seeks a declaratory judgment from this Court finding and stating that, because there was no actual damage to the freight, PREFERRED cannot be held liable to TRIPLE T, KRAFT and or the BENDER WAREHOUSE, for the value of the freight.
>
> PREFERRED also seeks a declaratory judgment from this Court under the Declaratory Judgment Act finding and stating that defendants TRIPLE T, KRAFT and the BENDER WAREHOUSE are jointly and severely liable for PREFERRED's transportation costs, storage costs and disposal costs.

(Complaint, ¶¶ 24-26).

II.

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56©:

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

III.

Bender Warehouse and Ralston moved for summary judgment on both the breach of contract and declaratory judgment claims. Separately, Ralston argues that summary judgment should be granted because, according to Ralston, the incorrect Ralston entity has been served and named as a defendant in this action. The Court will address these arguments in turn, starting with the breach of contract claim.

A.

Both Ralston and Bender Warehouse argue that Preferred's breach of contract claim must fail because no contract existed between these three entities. Moreover, Ralston and Bender Warehouse contend that the complaint fails to identify any contractual agreement between them and Preferred.

In response, Preferred agrees with Ralston's and Bender Warehouse's characterization of the breach of contract claim and asserts that the contract at issue in this case is solely between Preferred and Triple T. In fact, Preferred admits that it "does not allege a contract with either Ralston or Bender nor a breach by those parties ... There is no discernable purpose for Ralston and Bender moving for summary judgment on the breach of contract claim." (Consol. Opp. of Preferred Shippers, Inc. to Mot. for Summ. Judg. at p. 16).

In view of the Preferred's admission that it has no breach of contract claims against Bender Warehouse and Ralston, the motions of the moving defendants for summary judgment on Preferred's breach of contract claims are moot and for that reason are denied.

B.

Turning to the merits of the declaratory judgment claim, Ralston and Bender Warehouse moved for summary judgment on the declaratory judgment claim arguing, inter alia, that there is no

actual controversy between Preferred, and Ralston and Bender Warehouse. Specifically, the moving defendants suggest that the complaint is void of any allegation where Preferred asserted a substantive claim against the moving defendants. Additionally, nowhere in this action, or in any other action the Court is aware of, are Ralston and Bender Warehouse asserting any substantive claims against Preferred. Rather, Ralston and Bender Warehouse contend that all potential controversies arising from these events are between Triple T and Preferred only.

In response, Preferred argues that because Ralston and Bender Warehouse were entities that played significant roles in the rejection of the Marbits at the Bender Warehouse in Nevada, both entities are legitimate parties to this lawsuit. Further, as additional evidence of Ralston's participation in the goods' rejection, Preferred highlights the fact that Ralston acquiesced in the hiring of an independent inspector to determine whether the goods were actually damaged. Preferred also points out that Ralston sent its own inspector to determine whether the Marbits were contaminated. Accordingly, Preferred seeks a declaratory judgment from this Court finding that: (1) the "Carmack Amendment ... preempts all state and common law remedies resulting from alleged damage to freight shipped in interstate commerce"; (2) Carmack Amendment liability can only be imposed for actual loss or injury to the freight; (3) the freight was not damaged or contaminated, as stated in the independent inspector's report; (4) Preferred cannot be held liable for the freight because it was not damaged; and (5) the defendants are jointly and severally liable for Preferred's transportation costs. (Complaint ¶¶ 24-26).

The Declaratory Judgment Act states that upon the filing of an appropriate pleading, a district court "may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). The Act states, in pertinent part:

7

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Id. The major issue in this case is whether an actual controversy exists between Preferred and the moving defendants.

Upon reviewing the complaint, the Court concludes that the controversy in this case is strictly between Preferred (the carrier) and Triple T (the shipper), and the basic legal issue is the liability or non-liability of Preferred under its contract with Triple T for the delivery of allegedly contaminated Marbits to the ultimate consignee, Ralston, which, in turn, depends largely upon the strongly disputed factual issues regarding the Marbits' condition upon their arrival at their destination. It is of critical importance to note that there is no claim by Ralston or Bender Warehouse against Preferred. Preferred's concern is that in the controversy between Preferred and Triple T, if Bender Warehouse and Ralston are dismissed from this action "Triple T will undoubtedly point the finger to their empty chairs and blame Bender and Ralston for the rejection of the freight," which conceivably could result in Preferred not being able to recover its losses against Triple T. (Consol. Opp. of Preferred Shippers, Inc. to Mot. for Summ. Judg. at p. 10). Also, "there remains at least a possibility of future litigation between Triple T and Ralston" regarding the $23,408.00 Triple T paid Ralston. (Id.) While such speculative scenarios may or may not ever come to pass, it is clear that at this point in time, no claim has been made in this case against Preferred, and, in fact, neither Ralston nor Bender Warehouse has asserted any counterclaim against Preferred in this action. Preferred has not presented any evidence to show that its alleged apprehension is likely to come about or even that its apprehension is a reasonable one at this time.

Furthermore, to the extent it could be argued that a controversy exists (or conceivably could exist) between Preferred and the moving defendants, that controversy does not involve a determination of legal relationships among the parties or questions of law that could resolve the case by a declaratory judgment. Instead, the controversy is a hotly disputed question of fact - i.e. were the Marbits contaminated - that involves the conflicting opinions of at least two expert witnesses. This is the type of factual dispute that is normally resolved by a finder-of-fact, typically a jury, and not by a judge in a declaratory judgment action. Put simply, the case presented here is not an appropriate one to be decided in a declaratory judgment action, and the Court is not inclined to exercise its discretionary jurisdiction.[2] See Adrian Energy Assocs v. Michigan Pub. Serv. Comm'n, 481 F.3d 414, 421 (6th Cir.2007)(even where subject-matter jurisdiction exists, the district court has discretion to decline to entertain declaratory judgment actions).

The only claim that Preferred makes that could be considered a present claim (versus a future one based on a set of highly hypothetical facts) is its claims in the second cause of action, the breach of contract claim alleging that Preferred seeks "general compensatory and consequential damages against TRIPLE T, plus interest at the legal rate, in an amount that plaintiff will prove at trial ...."

Whether Triple T did breach its contract with Preferred, as well as the damages, if any,

---

[2] This conclusion was reached after considering the five factors outlined in Grand Trunk Western R.R. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir.1984). First, the Court notes that, even if the legal relations were identified, there would still be factual issues that needed to be resolved before the declaratory judgment action could be settled. Moreover, building off the first factor, issuing a declaratory judgment would not serve a useful purpose because factual issues would remain. Third, it appears that Preferred's sole motive in this case is for the Court to rule on the merits of the underlying alleged breach of contract claim (including the factual discrepancies necessary to do so) in a race for res judicata. Finally, it is obvious that the better and more effective remedy in this alleged breach of contract claim is outlined in Preferred's second cause of action, which is solely between Preferred and Triple T because they were the only parties that entered into the agreement in question.

associated with that breach, remain purely issues of fact. To whatever extent Preferred is attempting to assert a Carmack claim against Ralston and Bender Warehouse neither Ralston nor Bender Warehouse is a "delivering carrier, or another carrier over whose line or route the property is transported." 49 U.S.C. § 14706(a)(1). Additionally, Preferred has not attempted to allege elements of a tort claim against Ralston and Bender Warehouse, only that "Bender, Triple T and Ralston were all intimately involved in the common transaction which underlies this case." (Consol. Opp. of Preferred Shippers, Inc. to Mot. for Summ. Judg. at p. 11). That may be true, but it clearly does not suffice to state an "actual controversy" against Bender Warehouse and Ralston.

C.

Finally, Ralston argues that Preferred sued the incorrect Ralston entity. Namely, Ralston argues that the correct defendant should have been Ralcorp Holdings, Inc., not Ralston Food Sales, Inc. (See, e.g., Reply Brief of Defendant Ralston Food Sales, Inc at p. 2). Ralston therefore suggests that summary judgment should be granted on this ground alone.

Preferred responded that Ralston Food Sales, Inc. is a corporation organized under Nevada law that manufactures cold cereals in Sparks, Nevada. (Consol. Opp. of Preferred Shippers, Inc to Mot. for Summ. Judg. at p. 12). Preferred also highlighted the following facts: that the named defendant, Ralston Food Sales, Inc., and Ralcorp Holdings, Inc are both headquartered at the same address in St. Louis, Missouri; Ralston Food Sales, Inc.'s affiant is the Vice President of both the named defendant, as well as Ralcorp Holdings, Inc; the Ralston Food Sales, Inc.'s officers are the same as those at Ralcorp Holdings, Inc.; Ralston Food Sales, Inc. occupies the same office as Ralcorp Holdings, Inc.; Ralston Food Sales, Inc. participated in a settlement conference in this case; and Ralston Food Sales, Inc. answered the complaint, and, in doing so, admitted and denied certain

10

allegations, as well as asserted 16 affirmative defenses.  Thus, Preferred claims that even if the incorrect entity was named in this case, adequate notice was given to the purported proper defendant so that Ralcorp Holdings, Inc. suffered no prejudice.  Preferred therefore contends that the Court should substitute parties if it concludes that the incorrect Ralston entity was named.

The Court need not address this issue because, as noted supra, there is no controversy between Preferred, on the one hand, and Bender Warehouse and Ralston, on the other.  And, to the extent, if any, the Court has jurisdiction over Preferred's request for a declaratory judgment involving the moving defendants, the Court declines to exercise that jurisdiction.

IV.

Based on the foregoing, because there is no actual controversy between Preferred, Bender Warehouse and Ralston under the Declaratory Judgment Act, and because, to the extent any controversy exists regarding purely factual issues, the Court declines to exercise its discretion under the Declaratory Judgment Act, the declaratory judgment claims against Bender Warehouse and Ralston are hereby dismissed.  Further, because no breach of contract claim is asserted by Preferred against Bender Warehouse and Ralston in the second cause of action, the motions of Bender Warehouse and Ralston for summary judgment are moot and are denied for that reason.  The parties remaining are Preferred and Triple T.

**IT IS SO ORDERED.**


Date:  June 20, 2008                                                                 /s/ John D. Holschuh
                                               John D. Holschuh, Judge
                                               United States District Court